1:26-cr-00540
Judge Steven C. Seeger
Magistrate Judge Keri L. Holleb Hotaling
CAT. 3 / RANDOM

FILED
10/19/2026
EK
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAJESH PATEL | No.<br><br>Violation: Title 18, United States Code, Section 1343 |

**COUNTS ONE THROUGH FIVE**

The SPECIAL APRIL 2025 GRAND JURY charges:

1. At times material to this Indictment:

COVID-19 Outbreak and Testing

a. In or around December 2019, severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), the virus that causes coronavirus disease ("COVID-19"), began to spread throughout the world.

b. Various tests to detect SARS-CoV-2 were developed, including polymerase chain reaction tests ("PCR tests"), which typically were performed at clinical laboratories, and antigen tests ("rapid tests"), which could be conducted at collection sites. In order to perform PCR tests and rapid tests, collection sites obtained test specimens from patients.

The HRSA Uninsured Program

c. In or around March and April 2020, multiple federal laws were enacted that provided funding for COVID-19 testing for individuals for whom

COVID-19 testing was not covered by health insurance, including the Families First Coronavirus Response Act; the Coronavirus Aid, Relief, and Economic Security Act; and the Paycheck Protection Program and Health Care Enhancement Act.

d. The Health Resources and Services Administration ("HRSA") was an agency of the U.S. Department of Health and Human Services that oversaw and administered the funds appropriated through federal legislation to cover the costs of COVID-19 testing for individuals without health insurance coverage ("the HRSA Uninsured Program").

e. To participate in the HRSA Uninsured Program and receive reimbursement for COVID-19 testing, a provider had to attest to compliance with the Terms and Conditions for Participation in the HRSA Uninsured Program ("HRSA Terms and Conditions"). The HRSA Terms and Conditions required the provider to submit truthful information when it submitted claims for reimbursement for COVID-19 testing, and to certify that, among other things: to the best of its knowledge, the patients identified on any claim form were uninsured at the time services were provided; the provider would not be reimbursed for the test from another source; all items and services for which payment was sought were medically necessary for COVID-19 testing; and all information provided in the claim was true, accurate, and complete, to the best of the provider's knowledge.

f. HRSA required claims to include, among other information, a test recipient's name and date of birth; the type of test provided; the location where the

test was provided; and the amount to be charged to HRSA for each test. HRSA paid for COVID-19 tests for which a representation had been made that the testing was done pursuant to the HRSA Terms and Conditions, and that the information provided about the test and the test recipient was accurate. HRSA claims were processed through servers located in the state of Minnesota.

IDPH Reporting Requirements Related to COVID-19 Tests

g. The Illinois Department of Public Health ("IDPH") required Illinois laboratories to report to IDPH the results of any COVID-19 test conducted on an Illinois resident, regardless of whether the result was positive or negative.

PATEL, Laboratory A, Meridian, and Meridian Collection Sites

h. Defendant RAJESH PATEL was a resident of Schaumburg, Illinois, and was the Chief Operating Officer of Laboratory A. PATEL maintained bank accounts at Financial Institution C ("the Raj Patel Accounts"), on which he had co-signatory authority with Individual D.

i. Laboratory A was a clinical laboratory located in Hillside, Illinois, that was registered as a provider with the HRSA Uninsured Program through at least March 2022 and processed PCR tests during the COVID-19 pandemic. Laboratory A maintained an account at Financial Institution B ("Laboratory A Account 1"). PATEL had co-signatory authority on Laboratory A Account 1 with Individual E. When HRSA approved a claim from Laboratory A seeking reimbursement for COVID-19 testing,

funds from the HRSA Uninsured Program were electronically transmitted to Laboratory A Account 1.

j. In or around March 2021, Laboratory A entered into a laboratory services agreement with Meridian Medical Staffing, Inc. ("Meridian") for PCR testing of COVID-19 test specimens that Meridian had purportedly collected from patients at the Meridian Collection Sites. Laboratory A paid Meridian at least approximately $60.3 million for purportedly collecting the COVID-19 test specimens and providing Laboratory A with the biographical information relating to the purported patients that Laboratory A used to submit claims to HRSA. Many of the purported patients for whom Meridian provided information to Laboratory A either did not exist or never submitted COVID-19 test specimens to Meridian.

2. Beginning in or around May 2021, and continuing through in or around April 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

RAJESH PATEL,

defendant herein, along with others, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from the HRSA Uninsured Program by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that PATEL knowingly created fake "negative" test results in Laboratory A's laboratory information system ("LIS") for at least

approximately 380,000 purported PCR tests on purported test specimens supplied by Meridian, which Laboratory A never completed.

4. It was further part of the scheme that PATEL released those fake "negative" test results in Laboratory A's LIS so that the results could be sent to purported patients and so Laboratory A could fraudulently bill HRSA for having completed the PCR tests reflected in the results.

5. It was further part of the scheme that PATEL knowingly caused Laboratory A to submit at least approximately $66.2 million in fraudulent claims to the HRSA Uninsured Program for COVID-19 PCR test specimens that purported to be complete, knowing that such test specimens were not complete or eligible for reimbursement, resulting in at least approximately $44.1 million in payments to Laboratory A.

6. It was further part of the scheme that, to retain and distribute the proceeds of the scheme, PATEL transferred and caused to be transferred approximately $28 million in proceeds from Laboratory A Account 1 into the Raj Patel Accounts.

7. It was further part of the scheme that PATEL misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

8. It was further part of the scheme that for the purpose of misrepresenting, concealing, and hiding the existence, purpose, and acts done in

furtherance of the scheme, PATEL directed others to exclude tests purportedly collected by Meridian from the results that Laboratory A reported to IDPH.

9. On or about each of the billed dates set forth below, at Hillside, in the Northern District of Illinois, Eastern Division, and elsewhere,

RAJESH PATEL,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely electronic submissions, listed below, of Laboratory A requests for reimbursement from the HRSA Uninsured Program for PCR COVID-19 testing of specimens purportedly collected at Meridian Collection Sites, which submissions were processed through a server located in Minnesota, each such submission constituting a separate count:

| COUNT | Purported Date of Service | Approx. Release Date | Approx. Date Billed | Purported Patient | Approx. Amount Billed | Approx. Amount Paid |
|---|---|---|---|---|---|---|
| **One** | 11/2/2021 | 12/29/2021 | 12/31/2021 | R.C. | $185 | $123.46 |
| **Two** | 11/14/2021 | 12/29/2021 | 12/31/2021 | M.M. | $185 | $123.46 |
| **Three** | 12/3/2021 | 1/7/2022 | 1/11/2022 | M.N. | $185 | $123.46 |
| **Four** | 12/19/2021 | 1/17/2022 | 2/17/2022 | D.U. | $185 | $123.46 |
| **Five** | 12/20/2021 | 1/18/2022 | 2/15/2022 | L.H. | $185 | $123.46 |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL APRIL 2025 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any and all right, title and interest he may have in any property, real or personal, that constitutes and is derived, directly or indirectly, from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. If any of the forfeitable property described above, as a result of any act or omission by the defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

A TRUE BILL:

______________________________
FOREPERSON

______________________________
COLIN M. MCDONALD
ASSISTANT ATTORNEY GENERAL
NATIONAL FRAUD ENFORCEMENT DIVISION
U.S. DEPARTMENT OF JUSTICE